IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMMAD AHMADI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:07-CV-0255-N |
| | § | |
| MICHAEL CHERTOFF, Secretary of the | § | |
| Department of Homeland Security, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

This Order addresses the motion to dismiss [10] of Secretary of the Department of Homeland Security Michael Chertoff, Director of U.S. Citizenship and Immigration Services Emilio T. Gonzalez, Director of Texas Service Center of U.S. Citizenship and Immigration Services Evelyn Upchurch, and Director of the Federal Bureau of Investigation Robert S. Muller (collectively, the "Government").  Because plaintiff Mohammad Ahmadi may be entitled to have his application adjudicated under the Administrative Procedures Act ("APA"), 28 U.S.C. § 1331, and 28 U.S.C. § 1361 (the "Mandamus Act"), the Court denies the Government's motion.

## I. AHMADI'S APPLICATION

On December 22, 2003, Ahamdi filed an I-485 application for adjustment of status ("AOS") with the  U.S. Citizenship and Immigration Services ("CIS").  Shortly thereafter, Ahmadi provided CIS with fingerprints and supporting documents for his application.  In accordance with normal procedures, CIS requested the Federal Bureau of Investigation (the

"FBI") to conduct a full background check for Ahmadi, including what the Government calls a "name check." Almost four years later, the name check remains pending and is the only reason CIS has not adjudicated Ahmadi's application. In his complaint, Ahmadi alleges unreasonable delay in the processing of his application and requests that the Court compel adjudication of his application. The Government moves to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim.[1]

## II. THE COURT HAS JURISDICTION TO DETERMINE WHETHER THE DELAY IS UNREASONABLE

There is a presumption that the Court has jurisdiction to review the Government's alleged failure to timely adjudicate Ahmadi's AOS application. The Supreme Court has stated that there is a "presumption favoring judicial review of administrative action," and that it "may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Block v. Community Nutrition Institute*, 467 U.S. 340, 349 (1984).[2] The APA requires an administrative agency to act upon matters presented to it "within a reasonable time," 5 U.S.C. § 555(b), and provides that federal courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed." *Id*. § 706(1). Although it  is well established that the APA does not provide an independent basis for jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 105 (1977), the APA's command that an

---

[1]While the Government characterizes its motion to dismiss as only addressing jurisdiction, it is better understood as also requesting dismissal of Ahmadi's complaint for failure to state a claim.

[2]"Agency action" includes "failure to act." 5 U.S.C. § 551(13).

agency process matters within a reasonable time, combined with 28 U.S.C. § 1331, creates a presumption of federal question jurisdiction.[3]  *See Yu v. Brown*, 36 F. Supp. 2d 922, 929 (D.N.M. 1999).  The Government argues that the presumption of jurisdiction is rebutted either by 8 U.S.C. § 1255(a) or 8 U.S.C. § 1252.  The Court is not persuaded.

### A. The Government's Duty to Act is Nondiscretionary

5 U.S.C. § 701(a)(2) provides that the APA does not apply to agency actions that are "committed to agency discretion by law," but the Government's duty to act on AOS applications is not committed to agency discretion.  8 U.S.C. § 1255(a) provides that the Attorney General may, "in his discretion and under such regulations as he may prescribe," adjust an alien's lawful status to that of an alien lawfully admitted for permanent residence.  And although that section plainly makes the decision whether to grant or deny an application discretionary, "the regulations and the majority of court decisions make clear that immigration officials have a nondiscretionary duty to *act* on the application.  *See, e.g.*, 8 C.F.R. § 245.2 (providing that applicant '*shall* be notified of the decision of the director and,

---

[3]Ahmadi also requests relief under 28 U.S.C. § 1361, which states: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff." The propriety of mandamus relief depends on their being a "duty owed," and Ahmadi alleges that it springs from the APA's requirement that their applications be completed within a reasonable time.  Given the APA's authorization of courts to compel agency action unreasonably delayed, the request for mandamus relief seems largely duplicative.  In fact, the Tenth Circuit has held that mandamus relief is precluded by the availability of relief under the APA because mandamus relief requires that there be no other adequate remedies, though it recognizes that action under the APA "is essentially in the nature of mandamus relief." *Mt. Emmons Min. Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997).  Because analysis of Ahmadi's request for relief under § 1361 would be essentially redundant, the Court confines its analysis to their request for relief under the APA.

if the application is denied, the reasons for denial.')." *Emalky v. Upchurch*. No. 3:06-CV-2359-B, 2007 WL 944330, at \*3 (N.D. Tex. March 28, 2007).  In other words, although the Government has the discretion to grant or deny Ahmadi's application for AOS under 8 U.S.C. § 1255(a), the Government has a non-discretionary and ministerial duty to make a decision one way or the other.  Furthermore, 5 U.S.C. § 555(b) requires that the Government makes its decision "within a reasonable time," and there is no law that commits that ministerial duty to agency discretion.[4]

### B. *Judicial Review Is Not Precluded by 8 U.S.C. § 1252*

The Court's jurisdiction is not stripped by 8 U.S.C. § 1252.  The APA does not apply where "statutes preclude judicial review" of a matter.  5 U.S.C. § 701(a)(1).  Defendants argue that section 1252(a)(2)(B) is a statute that precludes judicial review of their delay in adjudicating AOS applications.  Section 1252(a)(2)(B) provides in pertinent part:

> [N]o court shall have jurisdiction to review . . . (i) any judgment regarding the granting of relief under section . . . 1255 [the section regulating AOS] . . . or (ii) any other decision or action . . . the authority for which is specified . . . to be in the discretion of the Attorney General . . .

---

[4]Many other courts faced with this issue agree.  *See Valenzuela v. Kehl*, 2006 WL 2474088 (N.D. Tex. Aug. 28, 2006) ("Many courts, including the United States District Court for the Northern District of Texas have held in immigration cases that petitioners and applicants have a clear right to have their adjustment applications and visa petitions adjudicated within a reasonable time of their filing.") (citing *Alkenani v. Barrows*, 356 F. Supp. 2d 652, 656 (N.D. Tex. 2005); *Fraga By and Through Fraga v. Smith*, 607 F. Supp. 517, 521 (D. Or.1985); *Yu*, 36 F. Supp. 2d at 930-932; *Paunescu v. I.N.S.*, 76 F. Supp. 2d 896, 901 (N.D. Ill. 1999); *Agbemaple v. I.N.S*, No. 97-C-854, 1998 WL 292441, at \*2 (N.D. Ill. May 18, 1998) (unpublished)); *see also Alsharqawi v. Gonzales*, No. 3:06-CV-1165-N, 2007 WL 1346667 (N.D. Tex. March 14, 2007).

*Id.* The Court is well aware that it does not have jurisdiction to review a *judgment* regarding the granting or denial of an AOS application, but the question presented is whether the Court has jurisdiction to review the failure to make a judgment. Section 1252(a)(2)(B) does not speak to that question. And although the Government's failure to adjudicate the AOS application may be characterized as a "decision or action," section 1252(a)(2)(B)(ii) only preludes judicial review of decisions or actions that are specified to be within the discretion of the Attorney General. As the Court has explained, *supra* II(A), the duty to act on an application, as distinguished from how to act, is not specified to be within the discretion of the Attorney General. Accordingly, section 1252(a)(2)(B) fails to rebut the presumption of jurisdiction.[5]

Having established that the Court has jurisdiction to consider whether the Government's delay is unreasonable and to compel performance if it does find unreasonable delay, the Court must consider whether Ahmadi has sufficiently alleged that the delay in adjudicating his application is unreasonable.

---

[5]Further weakening the Government's claims to broad discretion is 8 C.F.R. § 103.2(b)(18). That section authorizes a district director to "authorize withholding adjudication of a[n] . . . application if . . . an investigation has been undertaken," but it does not relieve the Government of its duty to adjudicate Ahmadi's application within a reasonable time. The Northern District of Texas has explained why § 103.2(b)(18) does not help the Government. *Emalky v. Upchurch*. No. 3:06-CV-2359-B, 2007 WL 944330, at *4 (N.D. Tex. March 28, 2007). As in that case, here "there is no evidence in the record indicating that Defendants have acted pursuant to that section in withholding adjudication on [the plaintiff's] application. Nor is there any evidence that they complied with the somewhat detailed procedural requirements set forth in the regulation." *Id.*

### III. 12(B)(6) MOTION TO DISMISS

When faced with a Rule 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). According to the Supreme Court, a viable complaint must include "enough facts to state a claim to relief that is plausible on its face," i.e., "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Bell Atlantic Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965, 1974 (2007). A plaintiff is required, however, to provide "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." *Id.* at 1965. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). In ruling on a Rule 12(b)(6) motion, the court must limit its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### IV. AHMADI HAS STATED A CLAIM FOR RELIEF

The Court cannot declare, at this early stage, that the Governments' delay is reasonable as a matter of law. There are two reasons why the delay in adjudicating Ahmadi's AOS application may be unreasonable. First, it may not be reasonable for CIS to wait for

the FBI to complete a delayed name check, and second, it may not be reasonable for the FBI to delay so long in completing that name check.[6]

### A. CIS's Decision to Wait for Completion of the Delayed Name Check May be Unreasonable

The Government seeks to establish that completion of a name check is required before Ahmadi's AOS application may be adjudicated, but their claim largely depends on obfuscating the distinction between naturalization applications and AOS applications. CIS's "requirement" apparently stems from their alleged implementation of 8 U.S.C. § 1105, which authorizes CIS to "maintain direct and continuos liaison with the [FBI] . . . for the purpose of obtaining and exchanging information for use in enforcing the provisions of [the Immigration and Nationality Chapter] in the interest of the internal and border security of the United States," *id*. § 1105(a), and requires the FBI to grant CIS access to "criminal history record information . . . for the purpose of determining whether or not a visa applicant or applicant for admission has a criminal history record . . ." *Id*. § 1105(b)(1). The Government suggests that 8 C.F.R. § 335.2(b) implements the authorized "continuous liaison" and establishes a requirement that name checks be completed before adjudication of AOS applications.[7]

_____

[6]The delay may also be unreasonable because of a combination of the two basic reasons, i.e., CIS may be unreasonable in awaiting an unreasonably delayed name check.

[7]The Government also may be suggesting that its practice of waiting indefinitely for completion of a name check reflects a direct interpretation of section 1105, rather than an interpretation of a regulation implementing section 1105. Regardless, the strategy fails because deriving such a specific policy from the broad framework instituted by section 1105 would require implementation.

Although the Government has cited a federal regulation that requires a full background check before the adjudication of naturalization applications, it has cited no corresponding regulation for AOS applications.  8 C.F.R. § 335.2(b) provides that a naturalization examination, and hence adjudication of a naturalization application, cannot proceed unless a full criminal background check has been completed.  Despite the Government's suggestions otherwise, section 335.2(b), by its terms, does not apply to AOS applications, and the disparate treatment makes some sense.  Delay in the processing of naturalization applications involves different interests than does delay in the processing of AOS applications; the hardships suffered by those awaiting AOS can be significant compared to the hardships suffered by those awaiting naturalization.  *See, e.g.*, Nancy Morawetz, *The Invisible Border: Restrictions on Short-Term Travel by Noncitizens*, 21 GEO. IMMIGR. L.J. 201, 205, 213 (2007) (explaining that "[l]awful permanent residence is the gold standard").[8]

Because the Government has not demonstrated that its decision to await completion of a long delayed name check has any textual support, the Court cannot declare that Ahmadi has failed to state a claim.  Although the Court agrees that national security is a top priority,

---

[8]The Government also cites Pub. L. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448, which provides:

> none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed . . .

This authority also applies only to naturalization applications – not AOS applications.

Congress is also concerned with efficiency in processing immigration benefits.  8 C.F.R. §

1571(b) ("It is the sense of Congress that the processing of immigration benefits should be

completed not later than 180 days after the initial filing of the application.").  Furthermore,

it is not clear, and the Government has not argued, what benefits to national security are

afforded by the name check program.  *See Singh v. Still*, 470 F. Supp. 2d. 1064, 1069 (N.D.

Cal. 2007) (explaining that "the mere invocation of national security is not enough to render

agency delay reasonable per se."); *see also* Prakash Khatri, *CIS Ombudsman's 2007 Annual

Report to Congress*, at 40 (June 11, 2007) (available at www.dhs.gov/cisombudsman)

("[T]he FBI name check process has limited value to public safety or national security,

especially because in almost every case the Applicant is in the United States during the name

check process, living and working without restriction.").

        Neither is the Court persuaded by the Government's argument that compelling CIS

to adjudicate the application in the absence of a fully completed name check would provide

no benefit to Ahamdi.  The Government contends that CIS would simply be forced to deny

Ahmadi's application, and that the Court would not have jurisdiction to review the denial.

It is not at all apparent that CIS would actually choose to deny Ahmadi's AOS application.

For example, CIS could place an expedited request with the FBI for completion of Ahmadi's

name check.  Also, if there is no requirement that CIS await completion of the name check,

CIS could employ an assumption, e.g., a name check processing for more than 3 years

without any positive identifications is presumed completed.

### B. *The FBI's Delay May be Unreasonable*

Even if CIS must await completion of an FBI name check, the FBI's delay in completing that name check may be unreasonable.[9]  The Government has offered as justification a general explanation of the FBI's name check process, the high volume of name check requests, and the general backlog in the system.  Although these factors are significant considerations, they are insufficient to make a delay of more than two years reasonable as a matter of law.[10]  *See Wei v. Chertoff*, 3:06-CV-2272-P (N.D. Tex. April 18, 2007).  "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case."  *Emalky v. Upchurch*. 3:06-CV-2359-B, 2007 WL 944330, at *6 (N.D. Tex. March 28, 2007) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922

---

[9]It is not entirely clear if the Government attempts to isolate the FBI from CIS, but such an attempt would be unsuccessful.  The argument is presumably of the following form: because the CIS cannot control the FBI and because the FBI has no independent obligation, the Court cannot compel completion of the name check.  This is mistaken.  First, it appears that CIS has the ability to request an expedited name check.  Second, if, as the Government claims, CIS must await completion of a name check, then CIS's duty to adjudicate an application within a reasonable time is also the FBI's duty.  *See Singh v. Still*, 470 F. Supp. 2d. 1064, 1068 (N.D. Cal. 2007), ("[CIS's] attempt to divorce themselves from the FBI is unavailing.  The critical issue is not whether a particular branch of the federal government is responsible for the delay; it is whether the individual petitioner versus the government qua government is responsible.").

[10]While Ahmadi "cannot seek *wholesale* improvement of this program by court decree," *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004), his request for timely adjudication is not necessarily a request for wholesale improvement.  It would probably be so if he implicitly demanded that the FBI reduce its general processing time for name checks, but Ahmadi does not necessarily demand that.  Instead, he may implicitly demand only that the FBI not arbitrarily permit some applications to linger indefinitely in processing while other applications are processed at a fraction of the time.  It is not clear, despite the Governments vague declarations otherwise, that the name check program truly is a first in, first out program.

(D.N.M. 1999)).  The Government has offered no particularized facts, and the Court cannot

say that an almost four year delay is reasonable as a matter of law.  *See id.* (noting that "some

courts have found delays unreasonable when as little as two years have passed from the date

the application was filed.").

## CONCLUSION

The Court has jurisdiction to consider whether the Government's delay in adjudicating

Ahmadi's application is unreasonable.  Furthermore, for the purposes of stating a claim for

relief, Ahmadi has sufficiently alleged that the delay has been unreasonable.  Accordingly,

the Court denies the Government's motion to dismiss for lack of subject matter jurisdiction

and for failure to state a claim.


Signed November 27, 2007.


David C. Godbey
United States District Judge